THE ST. CHARLES MANUFACTURING COMPANY, Plaintiff in Error, v. JAMES H. BRITTON, Defendant in Error.

May 16, 1876.

1. B. subscribed to the stock of a joint stock company, on condition that the capital stock should be $150,000; no calls to be made until $100,000 had been subscribed. Held, that he was liable to call when $100,000 had been subscribed, the company having organized under a certificate fixing the capital stock at $150,000.

2. One having, by mistake, signed an alphabetical list of subscribers to the company instead of the stock-subscription book of the company, who afterwards votes as a stockholder, is estopped to deny his subscription to the stock of the company.

ERROR to St. Louis Circuit Court.

Reversed and remanded.

M. McKeag and B. Emmons, jr., for plaintiff in error, cited : Ham. & Deans. Plank Road Co. v. Rice, 7 Barb. 166 ; Rensselaer & Wash. Plank Road Co. v. Wetsel, 21 Barb. 64 ; A. & N. L. R. R. Co. v. Smith, 5 Ohio St. 328 ; Martin v. Zellerbach, 38 Cal. 300 ; Clinton v. H. Ins. Co. 45 N. Y. 454 ; Shaffner v. Jefferies, 18 Mo. 512 ; O. & L. R. R. Co. v. Veazie, 39 Me. 580 ; Fiser v. M. & T. R. R. Co. 32 Miss. 359 ; State v. M. & F. Assn., 3 Zab. 192 ; P. & S. Plank Road Co. v. Griffin, 21 Barb. 654 ; S. & S. Plank Road Co. v. Thatcher, 11 N. Y. (1 Kern.) 102 ; Ohio W. C. v. Love's Exr., 16 Ohio, 20 ; Brownlee v. O. & I. R. R. Co., 18 Ind. 68 ; Plank Road Co. v. Clemens, 16 Mo. 359 ; S. & T. R. R. Co. v. Tipton, 5 Ala. 807.

*G. S. Van Wagoner*, for defendant in error, cited: O. & L. R. R. *v.* Veazie, 39 Me. 571; P. & S. R. R. *v.* Gazzam, 32 Pa. St. 340; Jenkins *v.* U. T. R. Co., 1 Caines' Cas. 86; Fiser *v.* M. & T. R. R., 32 Miss. 359.

Bakewell, J., delivered the opinion of the court.

Plaintiff filed a petition in which, after setting forth that it is a corporation duly organized as a joint stock company, under the name of "The St. Charles Manufacturing Company," for the purpose of manufacturing railroad cars, carriages, agricultural implements, and machinery, it alleges that, prior to the incorporation of plaintiff, and on January —, 1873, books were opened for subscription to the capital stock of said company, in which books the conditions of subscription were set out as follows:

"We, the undersigned, hereby subscribe to the capital stock of the 'St. Charles Manufacturing Company' the number of shares set opposite our respective names, at the rate of one hundred dollars per share, and hereby agree and bind ourselves to pay the calls upon said stock, as the same shall be made, from time to time, by order of the board of directors of said company. The purpose of said company is to manufacture railroad cars, other carriages, and agricultural machines and implements, within the city of St. Charles; and the subscription thereto is made upon the express conditions that the capital stock shall be at least one hundred and fifty thousand dollars, and that no calls upon the stock shall be made until the full amount of one hundred thousand dollars shall have been subscribed; that the whole amount of stock subscribed shall be paid up within one year from the first day of April, 1873, upon calls not exceeding ten per cent. per month."

. That, in February, 1873, defendant was solicited to take stock in said company, and a subscription book, containing the obligations and conditions above set out, presented to him and read by him; that he then agreed to take ten shares of said stock, and for that purpose signed his name, with the number of shares he intended to take, and the amount,

one thousand dollars ; but, by mistake, subscribed his name in a book containing an alphabetical list of stockholders instead of the book containing the written obligation he intended to sign, by reason of all which it is alleged that defendant did then subscribe to ten shares of $100 each of said company, and bind himself to pay the same according to the conditions set forth in the book which defendant intended to sign.

That afterwards, in February, 1873, an election was held by those who had taken and subscribed stock in said company, for the purpose of organization, at which election an authorized agent of defendant voted his ten shares of stock, and thereby assisted at an election of directors of said company ; that the directors then elected organized the company in accordance with the corporation law of the State, stating the amount of capital stock at $150,000, in shares of $100 each, and that defendant's name was placed on the books as subscriber and holder of ten shares of stock ; that the board of directors made calls upon the stock of the company, ten calls of 10 per cent. each, from time to time, between March 22, 1873, and January 8, 1874 ; and that more than $100,000 had been subscribed on the books of the company before the first call ; that defendant had full notice of each and all of these calls, and refuses to pay the same, though often requested.

Plaintiff, by reason of these allegations, asks judgment against defendant for $1,000, and interest on each installment from the date of each call.

To this petition defendant demurred on the ground that it does not set forth facts sufficient to constitute a cause of action, because—

1. It does not appear that the express conditions on which, according to the allegations of the petition, said alleged subscription was made have ever been complied with.

2. It does not appear from said petition that defendant ever signed any agreement to take any shares of stock.

The demurrer was sustained. Plaintiff refused to plead

further.    Judgment for defendant was entered on the demurrer.    Exceptions having been properly saved, the case is brought to this court by writ of error.

It appears from the petition that defendant, if he ever subscribed to this stock at all, subscribed to it upon the express condition that the capital stock of the company should be at least $150,000 ; and also upon the condition that no calls upon the stock should be made until the full amount of $100,000 had been subscribed.    A joint stock corporation is invariably empowered to raise a certain amount of capital by the mutual subscriptions of its members.    In this State a manufacturing company, desiring to become incorporated, signs and acknowledges, before a proper officer, a certificate in which, amongst other things, is stated the amount of the capital stock, and it is then empowered to raise the amount of stock set forth in the certificate.    The conditions of subscription in this case set forth the amount of capital stock of this company at at least $150,000 ; but they do not say that that amount will be at once subscribed, or will be subscribed before incorporation, or before any call is made upon the stock already subscribed.    They do provide that no call shall be made until at least $100,000 has been subscribed ; and the petition in this case alleges that over $100,000 was subscribed before any call was made upon the defendant.    As soon as that amount was subscribed, he became, by the terms of subscription, liable for any call not exceeding 10 per cent. a month.    It appears by the petition that the calls did not exceed this amount.    It does, therefore, appear sufficiently, from the face of the petition, that all the conditions of the alleged subscription have been sufficiently complied with, and the demurrer on this ground ought not to have been sustained.

But it is said that it does not appear from the face of the petition that the defendant ever signed any agreement to take any shares of stock.    It is alleged that, intending to sign the regular subscription books of the company, in

which the conditions of subscription were fully set out, he signed, by mistake, a book containing merely an alphabetical list of subscribers to the company. Shall he be permitted now to say that he did not subscribe? The petitioner says he voted for directors in the meeting preliminary to organization and incorporation. He is then, under these circumstances, estopped to say he did not subscribe. A subscription to the stock of a company, in the name of a third person, without authority, is not binding on such person; but a letter of attorney constituting a proxy to vote at a meeting of the company is evidence of ratification (*McCully* v. *Pittsburgh R. Co.*, 32 Penn. 25.) And, if it be said that this meeting was before incorporation, we reply that a partner in an intended undertaking cannot repudiate the concern to which he has thus pledged himself, after he has been a party to such measures to carry out the same. A person subscribing before the organization of a proposed joint-stock company raises a mutuality on his contract which will render him liable to the company after incorporation. *Danbury R. R. Co.* v. *Wilson*, 22 Conn. 435. If defendant, intending to sign the agreement set forth in the petition, having read it over, had, by mistake, signed a blank sheet of paper, it would have been taken as an authorization and direction to write on the blank space the agreement he had intended to sign. He put down his name, intending to sign the conditions of subscription and to subscribe $1,000; he wrote that sum after his name, and he voted for directors of the company. He shall not now be heard to say that he did not subscribe.

These are the allegations of the petition, and they are admitted by the demurrer.

We therefore think that the Circuit Court erred in sustaining the demurrer, and the judgment of the Circuit Court sustaining the demurrer to plaintiff's petition is reversed and the cause remanded. Judge GANTT concurs. Judge LEWIS, having been of counsel, did not sit.